IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
CASE NO.: 24-1993

VALERIE THOMAS,

        Plaintiff-Appellee,

v.

LVNV FUNDING, LLC and
RESURGENT CAPITAL SERVICES, L.P.,

        Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, CASE NO. 2021-CV-01948,
THE HONORABLE JEFFREY CUMMINGS, PRESIDING

REPLY BRIEF OF DEFENDANTS-APPELLANTS
LVNV FUNDING, LLC and RESURGENT CAPITAL SERVICES, L.P.

**BARRON & NEWBURGER, P.C.**
Nabil G. Foster
Manuel H. Newburger
Alyssa A. Johnson
Attorneys for Defendants-Appellants
LVNV FUNDING, LLC and
RESURGENT CAPITAL SERVICES, L.P.
53 W. Jackson Blvd. # 1205
Chicago, IL  60604
Tel.: 312.767.5750
nfoster@bn-lawyers.com
mnewburger@bn-lawyers.com
ajohnson@bn-lawyers.com

## TABLE OF CONTENTS

**Page No.**

SUMMARY OF ARGUMENT ................................................................................... 1

ARGUMENT ........................................................................................................... 5

I.     ARTICLE III STANDING IS NOT A STATIC QUALITY OF A CASE BECAUSE PROOF OF ARTICLE III STANDING IS REQUIRED AT TRIAL. ................................................................................................................. 5

     A.     Thomas Failed to Establish Article III Standing at Trial ................................ 5

     B.     There is No Article III Standing for Statutory Violation Without a Causally Related Concrete Injury-In-Fact ........................................................ 7

II.    THOMAS FAILED TO PRESENT EVIDENCE AT THE JURY TRIAL OF AN INJURY-IN-FACT AND THEREFORE LACKED STANDING ............................. 11

     A.     Thomas' FDCPA Claim Must Be Dismissed Because She Failed to Meet Her Burden of Proof that Article III Standing Existed for the Court ................................................................................................................ 12

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)(7) ................................... 18

CIRCUIT RULE 30(D) STATEMENT ................................................................................. 19

CERTIFICATE OF SERVICE ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ................................................................ 6

*Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020) ............................. 7

*Brown v. Montgomery*, No. 20-cv-04893, 2022 U.S. Dist. LEXIS 44448 (N.D. Ill. Mar. 14, 2022) ........................................................................................................................ 15

*Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020) ............... 7, 9

*Bueno v. Experian Info. Sols., Inc.*, No. 22-cv-617, 2024 U.S. Dist. LEXIS 182264 (N.D. Ill. Sep. 27, 2024) ............................................................................................... 8

*Casillas v. Madison Ave. Assocs.*, 926 F.3d 329 (7th Cir. 2019) ................................. 8

*DH2, Inc. v S.E.C.*, 422 F.3d 591 (7th Cir. 2005) ......................................................... 5

*Enrico's, Inc. v. Rice*, 730 F.2d 1250 (9th Cir. 1984) .................................................. 7

*Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022) ........................... 11, 14, 15

*Feggans v. Billington*, 291 N.J. Super. 382, 677 A.2d 771 (App. Div. 1996) ........... 15

*Fernandez v. RentGrow, Inc.*, No. 22-1619, 2024 U.S. App. LEXIS 23120 (4th Cir. Sep. 11, 2024) ............................................................................................................ 16

*Gulden v. Exxon Mobil Corp.*, 119 F.4th 299 (3d Cir. 2024) ...................................... 7

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2015) ......... 7

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S. Ct. 1202, 47 L. Ed. 2d 435 (1976) .......................................................................................................................... 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................... 5, 6

*Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395 (7th Cir. 2023) ...................... 14

*Markakos v. Medicredit, Inc.*, 997 F.3d 778 (7th Cir. 2021) ....................................... 7

*Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020) ................................. 7

*Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041 (7th Cir. 2021) ................................. 8

*Romaine v. Kallinger*, 109 NJ. 282, 537 A.2d 284 (1988) .......................................... 15

*SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972) .................................. 7

*Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021) .................................... 8

*Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021) .................................... 7

*Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 852 N.E.2d 825, 304 Ill. Dec. 369 (Ill. 2006) .............................................................. 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................ 8

*Spuhler v. State Collection Serv.*, 983 F.3d 282 (7th Cir. 2020) ................................. 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...................................... 7

## SUMMARY OF ARGUMENT

Thomas' response brief arguments should be disregarded by this Court for two prominent reasons. First, Thomas' responsive arguments denying a plaintiff's obligation to establish Article III standing at each stage of litigation are in conflict with the well-established precedent cited in LVNV's opening brief. Thomas essentially argues that her Article III standing is a static quality of her case such that if Article III standing is alleged or found to exist at a single moment in time, Thomas is relieved of the obligation to establish Article III standing at subsequent stages of the litigation. That is simply incorrect.

The second reason is far more troubling. Thomas improperly interjects unauthenticated hearsay documents that are not a part of the trial record into this appeal. Thomas' brief and Supplemental Appendix contain confidential settlement communications that: (1) are not a part of the trial record; (b) are inadmissible under FED. R. EVID. 408; and (c) have no relevance to the issues on appeal. LVNV and Resurgent object to the inclusion of those confidential settlement communications, which could only have been added for an improper purpose, such as attempting to create judicial bias with inadmissible documents. Even so, this is not the most troubling part of Thomas' response brief.

The greater departure from the norms of appellate conduct is the extensive use of inadmissible hearsay that was not presented at trial to argue that Thomas has Article III standing. What is particularly troubling about this is that Thomas' counsel stated during the trial that he knew that they could not admit the hearsay document into evidence, yet

Thomas' has included that very same hearsay document in the Supplemental Appendix and used that excluded, inadmissible document throughout the entire response brief. During the trial on December 13, 2024 and in response to an objection about a line of questioning in the direct examination of Thomas, her counsel stated that the TransUnion credit report, which was included in Thomas' Supplemental Appendix at Supp. Appx. A-24–A-34, could not be admitted into evidence because Thomas could not establish that a business records exception applied to this hearsay document:

> MR. McCORMICK: **It is on her TransUnion credit report**
>
> MR. NEWBURGER: I understand --
>
> MR. McCORMICK: -- and they were in possession of that.
> **I mean, we can't admit that into evidence because we
> didn't get a business record affidavit**, but it corroborates her
> testimony and she should bring that in, too, to speak about it.
>
> THE COURT: I am going to sustain the objection to you
> get getting into that line of questioning.

(Trial Transcript, Dec. 13, 2023, 9 A.M., Volume 2 ("TV2.") p.174-175) (emphasis added).)

Thomas did not appeal that evidentiary ruling, yet she seeks to avoid its consequence by putting before this Court the very same evidence that she could not present at trial. In doing so, she essentially argues that if she had a sponsoring witness (which she did not), and if she could have authenticated the consumer report (which she could not), and if she could have overcome the hearsay nature of the report (which she did not), and if she had presented expert testimony as to the significance of the report (which she did not and could not, as she never designated any experts), she might have been able to show the Article III standing that was never established at trial. However, the issue before this

Court is the record that Thomas actually made, not the one that she wishes she could have made.

The credit reports referenced in Thomas' brief and attached in Thomas' supplemental appendix were never admitted into evidence at the jury trial despite Thomas' counsel "back-dooring" attempt to weave the excluded hearsay into his direct examination of the Plaintiff. TV2. p.173, ln. 11-21. As part of a bench conference at trial after a timely objection to the back-dooring use of the hearsay credit reports that had been previously excluded by the trial judge, counsel for LVNV and Resurgent stated the following to the trial judge:

> Counsel for plaintiff never deposed a consumer reporting agency; never got a witness to authenticate this; never deposed anyone with any credit allegedly denied or reviewed an application; never did anything to authenticate a consumer report in any way; they never did anything to be able to show any adverse action against Ms. Thomas. He has no expert witnesses in this case.
> And, now, here we are at trial being surprised that they want to talk about this stuff.
> What it really is doing is it is back-dooring in that hearsay that you excluded.

(TV2. p.173, ln. 11-21.)

After that discussion and the ruling sustaining the objection (TV2. p.175 ln. 5-6), Thomas did not attempt to use the hearsay credit reports again at trial, never offered them into evidence, and did not appeal the ruling excluding the hearsay credit reports. Furthermore, she has not asserted that any of the trial court's evidentiary rulings prejudiced her in any way.

Thomas continues to ignore the requirement of authentication and the prohibition on the use of hearsay evidence, as her response brief relies extensively on the information contained in the excluded credit reporting documents to argue that Article III standing was established at the jury trial. In making these arguments she impermissibly argues outside of the record, and all of Thomas' arguments premised upon the excluded hearsay document must be ignored by this Court because the document is not part of the record, and it was never admissible at trial. For these reasons, LVNV and Resurgent object to its use.

Once all the arguments based upon the excluded hearsay document are set aside, it becomes obvious that the arguments raised by LVNV and Resurgent are largely left unaddressed by Thomas' response brief. Thus, Thomas offers little in the way of actual relevant legal argument, completely fails to address her failure of proof at trial and ignores her inconvenient admission at trial that the amount reported was actually accurate. At trial, the truth was finally revealed that the claim of inaccuracy by Thomas' counsel as to the amount being reported was itself a false statement.

The record of the trial proceedings shows that Thomas failed to establish Article III standing at the jury trial stage of her case and consequently, the federal district court lacked subject matter jurisdiction to enter a judgment in her favor. There was not a scintilla of evidence during the trial that any person saw, understood, and acted upon the tradeline of which she complains or that she incurred any expense as a result of that tradeline. None of the evidence admitted during the jury trial demonstrates that Thomas suffered a concrete, particularized, injury-in-fact sufficient to confer Article III standing

in this matter. Accordingly, the Court should reverse the district court order entering judgment against LVNV and Resurgent and remand this case with instructions to dismiss for lack of Article III jurisdiction.

## ARGUMENT

## I. ARTICLE III STANDING IS NOT A STATIC QUALITY OF A CASE BECAUSE PROOF OF ARTICLE III STANDING IS REQUIRED AT TRIAL.

### A.    <u>Thomas Failed to Establish Article III Standing at Trial</u>

Thomas' response brief fundamentally disregards her burden of proof to show that the case or controversy necessary to maintain Article III standing existed at every stage of the litigation.  Thomas essentially argues that once it is allegedly established at any single point in time, a plaintiff is relieved of her burden of proof to establish Article III standing at subsequent stages of the litigation.  That position conflicts with the precedent set by the Supreme Court and this Court on this issue.

A party seeking to invoke federal jurisdiction has the burden of establishing that she meets the requirements of standing. *DH2, Inc. v S.E.C.*, 422 F.3d 591, 596 (7th Cir. 2005).  The Supreme Court explained that "[t]he party invoking federal jurisdiction bears the burden of establishing these elements," at the pleading stage, at summary judgment and again at trial, "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In *Lujan*, the Supreme Court instructed that the facts establishing Article III standing must be made "with the manner and degree of evidence required at the successive stages of the litigation," the Court explicitly instructs that "**at the final stage,**

those facts ... [regarding Article III standing] must be 'supported adequately by the evidence adduced at trial'." *Lujan*, 504 U.S. at 561. (emphasis added). In 2013, the Supreme Court reiterated a central tenant of Article III jurisdiction that "[a] controversy must remain live ***throughout all stages of litigation*** for a federal court to have jurisdiction," *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91, (2013) (emphasis added). Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte. Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S. Ct. 1202, 47 L. Ed. 2d 435 (1976). If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action. *Id.*

Thomas' once-is-enough position would reward plaintiffs who (like her) make false claims of actual damages at the pleadings or summary judgment phase that cannot be supported by the facts and evidence at trial. Under her theory, all that a plaintiff need do to manufacture Article III jurisdiction irrevocably is to falsely represent that actual damages exist and survive a summary judgment motion. Then, when discovery and the facts show the actual damages assertions to be smoke without substance, the plaintiff would be immune from a challenge to standing and the court's jurisdiction. This would run contrary to the rule that a party may not create subject matter jurisdiction where none exists.

Thomas' position would also allow a plaintiff to continue litigation in which standing might have existed at the outset, but not as the case progressed. Courts have recognized that a litigant can lose Article III standing after the commencement of a case.

*See, e.g.*, *Gulden v. Exxon Mobil Corp.*, 119 F.4th 299 (3d Cir. 2024); *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253-55 (9th Cir. 1984) (citing *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972), regarding loss of Article III jurisdiction for moot cases).  Under Thomas' theory, a plaintiff who survives a standing challenge early in the case could continue that case, even if later evidence disproves the earlier finding. That is not the law.

> **B.**     **There is No Article III Standing for a Statutory Violation Without a Causally Related Concrete Injury-In-Fact**

This Circuit has made clear that Article III standing must be established in FDCPA cases where oftentimes only a statutory violation is alleged. *See Larkin v. Fin. Sys. of Green Bay*, 982 F.3d 1060 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2015); *Spuhler v. State Collection Serv.*, 983 F.3d 282 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021).

The Supreme Court has addressed standing in the credit reporting context:

> Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake'" in the case—in other words, standing. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: "'What's it to you?'"

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citations omitted).

Simply put, the Court concluded: "No concrete harm, no standing." *Ramirez*, 594 U.S. 413, 442. Thus, the Supreme Court has made it clear that alleged credit reporting

errors are not *per se* concrete injuries. A plaintiff must show that the alleged error actually affected her. Thomas "seems to think that mere dissemination of inaccurate credit information constitutes an injury . . . Not so. The inaccuracy must have caused harm or created an 'imminent and substantial' risk of future harm." *Bueno v. Experian Info. Sols., Inc.*, No. 22-cv-617, 2024 U.S. Dist. LEXIS 182264, at *9 (N.D. Ill. Sep. 27, 2024) citing *Ramirez*, 594 U.S. at 415. A "bare procedural violation" does not count. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). *Ramirez* primarily addressed the publication of inherently defamatory information. The names of some of the plaintiffs appeared on a government list of terrorists, drug traffickers, and other serious criminals. The Supreme Court in *Ramirez* did not back away from the bedrock rule laid down in *Spokeo* that a credit reporting inaccuracy is not inherently a reputational harm. *Bueno*, No. 22-cv-617, 2024 U.S. Dist. LEXIS 182264, at *24 (N.D. Ill. Sep. 27, 2024)(internal citations and quotations omitted). This court has repeatedly expressed the concept succinctly "no harm, no foul." *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 331 (7th Cir. 2019); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021).

In the instant case there was neither harm nor foul because Thomas never established at trial that any person saw, understood, or acted upon the tradeline at issue. She never demonstrated that the allegedly inaccurate trade line without the dispute

notation was defamatory[1] or represented something defamatory about her or her ability to pay debts. She did not show that the four-week delay in reporting her account as disputed was anything more than a drop of pink in a sea of already red ink.

In their opening appellate brief (Appellant Br. 11-13), LVNV and Resurgent cited multiple persuasive cases demonstrating how this Circuit continues to issue decisions dismissing cases because of lack of Article III standing. Thomas' response brief does very little, by way of legal argument or case citations, to counter the clear direction in this Circuit regarding the obligation of plaintiffs to fulfill their obligation to establish Article III standing, an obligation that Thomas failed to fulfill at trial.

A plaintiff's assertion of a "violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing. There must still be a concrete injury." *Brunett*, 982 F.3d at 1068. Thomas failed to present any admissible evidence that she had a concrete injury. The check Thomas wrote earlier in the case asserting a concrete injury was one that she could not cash at trial. Thomas' testimony at trial (and in her deposition) revealed that the statement by her lawyer in the Letter, that the amount being reported was inaccurate, was simply false.[2] Her entire case was based

---

[1] In fact, it was not defamatory, as her trial testimony showed the reporting data to be truthful and accurate.

[2] The precise wording of the letter that precipitated this action calls into question whether the letter even disputed the debt. It is possible for the credit reporting to be inaccurate but the debt itself not to be disputed. That might occur when a consumer acknowledges the correctness of the debt (as Thomas did) but asserts that data in the credit report (such as a discrepancy between an undisputed balance and the balance shown on the credit report, e.g., the balance (undisputed) is $137 but the reported tradeline says $173) is inaccurate. Here, the letter disputed only the

upon that falsehood, and she was unable to show at the jury trial that Resurgent or LVNV caused her any concrete injury.

The Letter's statement that "the amount reported is not accurate" was contradicted by Thomas' testimony at her deposition on April 12, 2022, when she testified that her total payments on the Account equaled $135 and that she agreed that subtracting $135 from a debt of $322 would leave a remaining amount of $187. (TV2. p.188-190.) The Letter's statement that "the amount reported is not accurate" was contradicted a second time by Thomas before the jury when she testified on December 13, 2024, during cross-examination as follows:

> Q: Okay. And do you remember when Ms. Johnson walked you through those payments in your deposition, and she did the math with you, and you agreed that the amount that was being reported on your consumer report was the exact amount you get when you deduct the payments you had made from the charge-off balance with Fingerhut?
> You agreed with that, didn't you?
>
> A. I thought I must have, yes.
>
> Q. Well, do you remember you made $135 worth of payments, right?
>
> A. Yes.
>
> Q. And the Fingerhut charge-off balance was $322, right?
>
> A. I believe so.
>
> Q. And when you subtract 135 from 322, you get to the exact balance that was being reported by LVNV, don't you?

___

accuracy of the amount being reported; it did not dispute that Thomas owed the debt or the balance owed of that debt.

A. Yes.

(TV2. p.191, l. 3-18.)

Thomas failed to demonstrate a causally related injury in fact.

## II. THOMAS FAILED TO PRESENT EVIDENCE AT THE JURY TRIAL OF AN INJURY-IN-FACT AND THEREFORE LACKED STANDING

During the jury trial, Thomas failed to present any evidence of the alleged injury-in-fact. Unlike the plaintiffs in *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022) (one of whom proved an impact on her credit score and the other who proved publication to a third party), Thomas rested and closed her case at trial without offering any evidence of a change in her credit score or any publication to a third party of allegedly false information. She did not meet her burden of proof that she had Article III standing. Thus, the district court lacked subject matter jurisdiction to enter a judgment.

Thomas' presentation of evidence to a jury was entirely lacking in any evidence of an injury-in-fact sufficient to establish Article III standing in the manner and degree of evidence required at the jury trial stage of the litigation. When Thomas failed to present any evidence at trial of a concrete injury-in-fact to satisfy Article III, her FDCPA statutory claim became moot as the district court lacked jurisdiction and could no longer make a decision to affect the rights of the parties, such as entering a judgment for statutory damages in favor of Thomas.

Thomas desperately attempts to argue against the glaring failure to present evidence at the jury trial to establish Article III standing by impermissibly interjecting an

excluded hearsay document into the record for this Court to consider. Almost all of Thomas' response argument is premised upon the content of inadmissible documents that are not a part of the record. The document was excluded from evidence at the jury trial because it was hearsay and Thomas' counsel acknowledged on the record that they could not seek the admission of the document into evidence because they could not prove the business records hearsay exception applied. (Trial Transcript, Dec. 13, 2023, 9 A.M., Volume 2 ("TV2.") p.174-175.) However, that has not deterred Thomas from improperly including the excluded hearsay document in her supplemental appendix and arguing in her response brief that the contents of that excluded hearsay document support her assertion that she established Article III at the jury trial.

### A. Thomas' FDCPA Claim Must Be Dismissed Because She Failed to Meet Her Burden of Proof that Article III Standing Existed for the Court

Thomas alleged in the Complaint that the allegedly inaccurate credit reporting adversely impacted her credit reputation and creditworthiness and defamed her credit reputation. (Appx SA-010 – SA-015, ECF No.1 at ¶35.) Such claims were sufficient for *facial* assertions of Article III standing in a pleading. However, when she reached the jury trial stage, she had no admissible evidence that any person ever saw, understood, or acted upon the tradeline at issue or that Thomas incurred any expense or other harm because of the tradeline. Thomas' assertions of an injury-in-fact were nothing more than a check which she wrote to the court but that could not be cashed.

Thomas' alleged injury-in-fact was merely hypothetical. She *might* have suffered harm during the four-week period at issue had she been able to show an impact on her

credit score, an adverse action by an existing or potential creditor, or an expense that she incurred as a result of the tradeline, but she had no evidence of any of those things. She wholly failed to present any evidence trial to prove she suffered an injury-in-fact. If the tradeline at issue, during the four weeks that it existed, was seen, understood, or acted upon by anyone, she had almost three years to obtain such evidence. At the end of that time, she had nothing.

The burden at issue is not too high, and it is not beyond a plaintiff's reach. The authentication of a consumer report is a relatively simple process whether it is done by deposition or trial testimony from a competent sponsoring witness. The same is true of showing an impact on credit score or an adverse action by a current or potential creditor. Throughout the entirety of the case Thomas failed to provide any evidence that the tradeline at issue had a material impact (or, for that matter, any impact) on her credit score. She never designated a single expert witness, even though credit scores are not a matter for lay testimony, and she never even designated a sponsoring witness to authenticate a consumer report or attest to a credit score. It is not that the burden was too high; it is that Thomas showed a reckless disregard for her burden of proof, the Rules of Evidence, and her obligation to show standing. She approached this case like a defamation plaintiff who cannot or will not show that anyone ever heard or saw the alleged defamatory words but who wants money simply because the words were uttered.

Thomas did not depose any consumer reporting agency, nor did she subpoena to trial a witness from any such agency. She did not depose or subpoena to trial a single creditor or potential creditor that allegedly took an adverse action because of the tradeline

at issue. And she did not present a shred of evidence that the four-week absence of the dispute on her consumer report affected her credit score by even a single digit[3] or that she incurred a penny of expense because of that tradeline. In sum, there was a complete failure to present any evidence of a concrete injury by failing to show that the tradeline at issue affected her in any way. She is no different than any of the other FDCPA plaintiffs whom this Court has found did not have Article III standing because they erroneously conflated a statutory violation with concrete harm. Standing was a fundamental part of her burden of proof, and the record shows that she failed to meet that burden.

In *Ewing*, the plaintiffs provided proof of damage to their credit scores, thereby establishing their Article III standing. *Ewing*, at 1149-50. That is not the case here. Thomas never provided any evidence at the jury trial of a change in her credit score. The record is clear that she lacked any evidence of actual damages. At the close of Thomas' case, there was no admissible evidence demonstrating that she was caused any harm. There was no admissible evidence at trial that anyone viewed her credit report during the brief time period where the account was not reported as disputed (from February 2, 2021, to March 3, 2021). (Appx. SA-016, ECF No. 69.) There was no evidence that anyone acted on the tradeline at issue, and there was no evidence that LVNV's tradeline caused Thomas to incur any expense. Thomas could not even show that she had spent as little as the $3.95

---

[3] On this point, Thomas failed in the simplest task imaginable. If the four-week absence of the "disputed" notation had affected her credit score she could have subpoenaed evidence of the score during that period and immediately after. She did not do that.

that was held to be sufficient in *Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395 (7th Cir. 2023).

While the *Ewing* court compared the harm to that of defamation, harm is still required to be proven in a defamation case. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022) ("the harm Congress sought to remedy through § 1692e(8) is analogous to the harm caused by defamation, which has long common law roots."). "A statement is defamatory when it 'is false and injurious to the reputation of another' or exposes another person to 'hatred, contempt or ridicule' or subjects another person to 'a loss of the good will and confidence' in which he or she is held by others." *Feggans v. Billington*, 291 N.J. Super. 382, 390, 677 A.2d 771 (App. Div. 1996) (citing *Romaine v. Kallinger*, 109 NJ. 282, 537 A.2d 284 (1988)). In her deposition and at trial, Thomas' testimony established that **the amount reported was not inaccurate**; thus, it was not false. It is axiomatic that truthful or correct information is not defamatory, and, in this case, Thomas admitted under oath that the amount reported was accurate. (TV2 p.191, l. 3-18.)

Even if one were to still consider the failure to note the dispute as a potentially defamatory statement, Thomas still fails to satisfy Article III standing. This is because an alleged defamatory statement that is heard by no one is not actionable. *Brown v. Montgomery*, No. 20-cv-04893, 2022 U.S. Dist. LEXIS 44448, at *22 (N.D. Ill. Mar. 14, 2022) citing *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 852 N.E.2d 825, 839, 304 Ill. Dec. 369 (Ill. 2006) (in order to be successful for a defamation claim, a plaintiff must prove publication to a third party and damages). There is no evidence that in Thomas' case the absence of a dispute notation caused any injury whatsoever. There is no admissible

evidence that any person actually received, understood, or acted upon the information submitted by LVNV and Resurgent. Thomas did not suffer (and certainly failed to prove that she suffered) a concrete and particularized harm to support a determination that the district court had Article III jurisdiction over this matter. The claimed injuries are, at best, speculative and hypothetical with no factual basis. If the tradeline at issue, during the four weeks that it existed, was seen, understood, and acted upon by anyone, Thomas should have produced admissible evidence of the same. She did not, and no such admissible evidence was presented to the jury at trial.

Recent case law from the Fourth Circuit confirms this premise: "Reputational harm can be a concrete injury, but only if the misleading information was brought to the attention of a third party who understood its defamatory significance." *Fernandez v. RentGrow, Inc.*, No. 22-1619, 2024 U.S. App. LEXIS 23120, at *2 (4th Cir. Sep. 11, 2024). Simply put, Thomas provided no admissible evidence at trial of reputational harm sufficient to demonstrate a concrete injury.

The issue before the Court in this case arises from the difference between a facial attack on the jurisdictional allegations in a plaintiff's pleadings and a substantive attack on a plaintiff's failure to prove concrete injury. Thomas filed a Complaint in which she claimed to have suffered a concrete injury, but at trial those claims proved to be unsupported by any admissible evidence. Indeed, Thomas' deposition and trial testimony established the Letter's statement that "the amount reported is not accurate" was itself a false statement because Thomas testified that after one subtracts the amount of her voluntary payments toward her debt, the resulting amount is the same amount

being reported. (TV2. p.191, l. 3-18.) Thus, the tradeline was accurate. Moreover, Thomas presented no admissible evidence that any information in or about her credit report was brought to the attention of a third party who understood its significance and acted upon it.

Nothing in the record of the jury trial demonstrates that Thomas suffered a concrete, particularized, injury-in-fact sufficient to confer Article III standing in this matter. Accordingly, the Court should reverse the district court order entering judgment against LVNV and Resurgent and remand this case with instructions to dismiss for lack of Article III jurisdiction.

## CONCLUSION

Appellants LVNV FUNDING, LLC and RESURGENT CAPITAL SERVICES, L.P request that the judgment of the district court be reversed with instructions to dismiss for lack of jurisdiction.

Dated this 22nd day of November 2024.

<div style="margin-left: 40%;">

Barron & Newburger, P.C.
Attorneys for Defendants-Appellants
LVNV FUNDING, LLC and
RESURGENT CAPITAL SERVICES, L.P

/s/ *Nabil G. Foster*
Nabil G. Foster
Manuel H. Newburger
Alyssa A. Johnson

</div>

Barron & Newburger, P.C.
53 W. Jackson Blvd. # 1205
Chicago, IL 60604
Tel.: 312.767.5750

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)(7)**

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 4,783 words.

Dated: Nov 22, 2024.

Barron & Newburger, P.C.
Attorneys for Defendants-Appellants
LVNV FUNDING, LLC and
RESURGENT CAPITAL SERVICES, L.P

*/s/Nabil G. Foster*

Nabil G. Foster
Manuel H. Newburger
Alyssa A. Johnson

CIRCUIT RULE 30(D) STATEMENT

The undersigned certifies that all materials required by Cir.R.30 (a) and (b) are included in the Appellant's appendix.

Barron & Newburger, P.C.
Attorneys for Defendants-Appellants
LVNV FUNDING, LLC and
RESURGENT CAPITAL SERVICES, L.P.

/s/*Nabil G. Foster*
Nabil G. Foster
Manuel H. Newburger
Alyssa A. Johnson

CERTIFICATE OF SERVICE

I certify that on November 22, 2024, I electronically filed the brief with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the ECF system. Service will be obtained on all parties through the ECF system.

Dated this 22nd day of November 2024.

> Barron & Newburger, P.C.
> Attorneys for Defendants-Appellants
> LVNV FUNDING, LLC and
> RESURGENT CAPITAL SERVICES, L.P.
>
> /s/ *Nabil G. Foster*
> _____
> Nabil G. Foster
> Manuel H. Newburger
> Alyssa A. Johnson

Barron & Newburger, P.C.
53 W. Jackson Blvd. # 1205
Chicago, IL  60604
Tel.: 312.767.5750